IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BENJAMIN LAWSKY**, | : | |
| *Superintendent of Financial Services of the* | : | **CIVIL ACTION** |
| *State of New York, in his capacity as* | : | |
| *Liquidator of Nassau Insurance Company,* | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **ABETECH GROUP, INC.,** *et al.* | : | No. 12-1564 |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                                              **September 8, 2014**

With trial looming in this dispute involving an alleged fraudulent transfer, Plaintiff settled its dispute with all Defendants, save one—Lentz, Cantor & Massey, Ltd. ("Lentz Cantor"). Lentz Cantor argues that based on this settlement and money that Plaintiff received earlier, the one satisfaction rule bars further recovery here. Accordingly, Lentz Cantor filed a motion in limine to preclude Lawsky from presenting evidence or contentions that he has not recovered the full amount of the complained of transfers. For the reasons that follow, the motion is denied.

**I.      FACTS**

Plaintiff, Benjamin Lawsky, is the Superintendent of Financial Services of the State of New York and the Liquidator of Nassau Insurance Company. (Jt. Pretrial Stip. ¶ 1.) Lawsky has a judgment in the amount of $28.8 million against Defendant Richard DiLoreto and a judgment in the amount of $20.5 million against Jeanne DiLoreto stemming from the DiLoretos' conduct with respect to Nassau Insurance Company. (*See id*. ¶¶ 5-6.) The judgment was recorded in Chester County, Pennsylvania, where Jeanne DiLoreto owns property at 16 Green Lane. (*Id*. ¶ 7.) Before the

judgment was entered, four mortgages totaling close to $1.8 million were placed upon the Green Lane property. (*Id.* ¶ 8.) One of these mortgages was to Defendant Abetech Group, Inc., a business controlled by the DiLoretos' son, Chip. (*See id*. ¶¶ 2, 9.) On November 3, 2008, Abetech initiated foreclosure proceedings against the Green Lane property. (*Id.* ¶ 11.) During those proceedings, Jeanne DiLoreto was represented by Albert Massey of Lentz Cantor. (*Id.*) On April 16, 2009, a sheriff's sale of the Green Lane property took place; Abetech was the winning bidder with a bid of $1,301,000. (*Id.* ¶¶ 12-13.) Following the sheriff's sale, Lawsky received $1,206,309.31. (*Id.* ¶ 16.) The remaining mortgages on the Green Lane property were paid, leaving Abetech as the owner of the property free and clear. (*See id*. ¶¶ 18-21.) The dispute that is the subject of this motion centers around money that passed through the Lentz Cantor IOLTA. Specifically, approximately $2.5 million passed from entities allegedly controlled by the DiLoretos to Lentz Cantor. Withdrawals were subsequently made on the Lentz Cantor IOLTA account in order to pay the sheriff's sale bid or to pay mortgages held on the Green Lane property. Lawsky claims that payments made to Lentz Cantor were fraudulent transfers. He claims that Lentz Cantor used the money to covertly fund Abetech's purchase of the Green Lane property and to pay off the remaining mortgages on the land at the time of the purchase.

      On the eve of trial, Lawsky settled with the DiLoretos, Chip, and Abetech. Pursuant to the settlement, Abetech agreed to deed to Lawsky the property at 16 Green Lane. (June 9, 2014 Hr'g Tr. at 4.) Lawsky agreed to credit $1.65 million toward the judgment against the DiLoretos. (*Id.*) The DiLoretos may continue to live at the property for a maximum of three years. (*Id.*)

**II.     DISCUSSION**

Although the motion before the Court is termed a motion in limine, the stakes are high. If Lentz Cantor's motion is granted, it will be off the hook for any damages as a result of its alleged conduct. Such an outcome would call into question the purpose of proceeding with the trial against Lentz Cantor.

Lentz Cantor argues that:

> The Liquidator has received at least as much as the equivalent value of the amounts the Liquidator contends was fraudulently transferred through the IOLTA of Lentz Cantor. The Liquidator received $1,206,309.31 from the proceeds of the sheriff's sale plus the Green Lane Property unencumbered by any mortgages. The sum of the cash and equivalent value received by the Liquidator is at least $2,856,309.31. The amount received by the Liquidator in cash equivalent value exceeds the amount of the alleged fraudulent transfers through the IOLTA of Lentz Cantor.

(Mem. of Law of Lentz, Cantor in Supp. of its Mot. in Limine to Preclude Pl. From Presenting Evidence or Contentions He Has Not Recovered the Full Amount of the Complained of Transfers [Lentz Cantor Mem.] at 4-5.)

The legal support for its argument is the "one satisfaction rule." A plaintiff injured by multiple tortfeasors may sue and recover a judgment against any one or all of the tortfeasors. *See Brandt v. Eagle*, 602 A.2d 1364, 1367 (Pa. Super. Ct. 1992). Under the one satisfaction rule, however, "although a plaintiff may obtain a judgment against several tort-feasors for the same harm, he or she is entitled to only one satisfaction for that harm." *Id*. "Full satisfaction may arise from a settlement with less than all tortfeasors." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir.

Case 2:12-cv-01564-BMS   Document 94   Filed 09/08/14   Page 4 of 6

1999). The burden rests with party asserting the one satisfaction rule to demonstrate its applicability, including record evidence of the circumstances surrounding a settlement. *See id*. Determining whether the rule applies to a settlement requires a fact-sensitive analysis of whether the settlement represents the true value of the claim. *See Vassell v. Travis*, Civ. A. No. 04-1313, 2007 WL 2571634, at *1 (E.D. Pa. Sept. 4, 2007); *see also Am. Bd. of Internal Med. v. Von Muller*, Civ. A. No. 10-2680, 2012 WL 2740852, at *13 (E.D. Pa. July 9, 2012).

The parties dispute the import of the $1,206,309.31 received by Lawsky following the sheriff's sale. As previously noted, Lentz Cantor argues that this amount should be included when deciding whether Lawsky has received full satisfaction here. Lawsky contends that "Lentz Cantor does not get credit for this amount because it was not paid outright to the Liquidator. Rather, it was paid in satisfaction of the Liquidator's judgment lien on the 16 Green Lane property." (Liquidator's Mem. in Opp'n to Lentz Cantor Mot. to Preclude Pl. From Presenting Evidence or Contentions He Has Not Recovered the Full Amount of the Complained of Transfers [Lawsky's Opp'n] at 2.) According to Lawsky, he was entitled to $1,206,309.31 regardless of the what person or entity was the high bidder on the Green Lane property. (*Id*. at 3.)

Lentz Cantor rightly notes that Lawsky's position seems contrary to the legal position he took in his proposed jury instructions. (*See* Supplemental Mem. of Law of Lentz, Cantor in Supp. of its Mot. in Limine to Preclude Pl. From Presenting Evidence or Contentions He Has Not Recovered the Full Amount of the Complained of Transfers [Lentz Cantor Supplemental Mem.] at 1-2; Reply Mem. of Law of Lentz, Cantor in Supp. of its Mot. in Limine to Preclude Pl. From Presenting Evidence or Contentions He Has Not Recovered the Full Amount of the Complained of Transfers [Lentz Cantor Reply] at 3.) Lawsky sought to have this Court instruct the jury that he was entitled to a

verdict in his favor in the amount $1,291,349.39, calculated by subtracting the amount Lawsky received from the sheriff's sale proceeds from the amount transferred to Lentz Cantor. (*See* Lawsky's Proposed Jury Instructions.)

Unfortunately, Lawsky does not explain this apparent inconsistency. If this case proceeds, Lawsky may be required to square his position and discuss what effect, if any, the $1,291,349.39 has here. However, the Court concludes that this earlier payment does not affect the outcome here because Lentz Cantor has not met its burden to demonstrate that the one satisfaction rule applies. Although Lawsky is giving the DiLoretos a $1.65 million credit on the judgment they owe Lawsky, it does not follow that $1.65 million should be applied to value of Lawsky's claim against Lentz Cantor. Currently, Lawsky is the owner of a piece of property occupied by married nonagenarians. There is no evidence that the home will soon be sold. Moreover, the settlement allows the DiLoretos to remain in the home until 2017. Lentz Cantor has not pointed this Court to a case factually similar to the circumstances here, in which the appraised value of a piece of property that cannot be disposed of for years in the future can serve as the basis for application of the one satisfaction rule. Because the Court concludes that valuing the settlement as to Lentz Cantor is not as clear as Lentz Cantor suggests, it is possible that a jury could find Lentz Cantor liable in an amount greater than the settlement. Therefore, the one satisfaction rule does not apply. *See Hess v. Commonwealth*, 868 A.2d 1283, 1285-86 (Pa. Commw. Ct. 2005) (refusing to apply one satisfaction rule because settlement did not necessarily fully compensate plaintiffs).

### III. CONCLUSION

Lentz Cantor has not convinced this Court that Lawsky's claims have been fully satisfied and

therefore the Court will not apply the one satisfaction rule. Lentz Cantor's motion is therefore denied. An Order consistent with this Memorandum will be docketed separately.